IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

IN RE:                                                Chapter 11 Cases

LAND RESOURCE, LLC, et al.,                          Case No.: 6:08-bk-10159-ABB

     Debtors.

                       Jointly Administered with cases
                       6:08-bk-10159 through 6:08-bk-10192

_____/

THE CINCINNATI INSURANCE
COMPANY,

        Plaintiff,

v.                                                    Adv. Pro. No.:_____

LAND RESOURCE GROUP OF
NORTH CAROLINA, LLC, a North
Carolina limited liability company;
LAND RESOURCE GROUP, INC., a
Georgia corporation; LR BUFFALO
CREEK, LLC, a Georgia limited liability
company; LAND RESOURCE, LLC
a/k/a LAND RESOUCE COMPANIES,
LLC, a Georgia limited liability company;
MIKE FLASKEY; J. ROBERT WARD;
PAUL BEIDEL; ROB VACO;
SOUTHERN H.O.A. MANAGEMENT,
LLC; CLARK CHAMPION; TAMMY
MIKESELL; CHARLENE MILLER;
PATRICK MOORE; SHANNON
GLOVER; MITCH BEN MILLER;
MARIE FOX; HERSCHEL ALLEN and

wife, ELIZABETH P. ALLEN; SVEN
RONNY CARLSSON and wife, SUSAN
P. CARLSSON a/k/a CARLSSON
INVESTMENTS, LLC; WAYNE COX
and wife, JOSEPHINE COX; GLENN A.
DAY and wife, KATHERINE
KOSTOFF-DAY; CALVIN C.
HENDERSON, and wife ELAINE W.
HENDERSON; JOHN J.
KASIANOWICZ and wife, RACHEL H.
KASIANOWICZ; GLENN M. SWARTZ,
JR. and wife, DAWNA L. SWARTZ;
DAVID LEE WOOD; STEPHEN PETER
BLOOM; MARCOS I. RUBERT and
wife, KATHRYN M. RUBERT; AND
BRIAN J. KREBS.

       Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW The Cincinnati Insurance Company, Plaintiff in the above-styled case, and hereby files this Complaint for Declaratory Judgment, showing the Court as follows:

## PRELIMINARY STATEMENT

This is an action for declaratory judgment pursuant to 28. U.S.C. § 2201 and 2002, and Fed. R. Civ. P. 57. The Cincinnati Insurance Company (hereinafter "The Cincinnati") issued policies of insurance to Defendants Land Resource Group of North Carolina, LLC; Land Resource Group, Inc.; Land Resource, LLC a/k/a Land Resource Companies, LLC; LR Buffalo Creek, LLC; and Southern HOA

Management, LLC (hereinafter the "Land Resource Entities"). The policies are property of the respective bankruptcy estates of the Land Resource Entities. *Edgeworth v.* Edgeworth, 993 F.2d 51 (5th Cir. 1993); *c.f. Vitek, Inc. v. Flyod,* 51 F.3d 530 (5th Cir. 1995).

These policies also insured, subject to the terms and conditions contained therein, officers, directors, members, and/or employees of the Land Resource Entities, including individual Defendants herein Michael Flaskey; J. Robert Ward; Paul Beidel; Robert Vacko; Clark Champion; Tammy Mikesell; Jeanette Manner-Jones; Charlene Miller; Patrick Moore; Mitch Ben Miller; Shannon Glover; and Marie Fox (hereinafter "Land Resource Individual Defendants"). (The insured Land Resource Entities and the insured Land Resource Individual Defendants are collectively referred to as the "Land Resource Defendants"). These polices of insurance provided coverage for "property damage," "bodily injury" and "personal and advertising injury," as defined and restricted in the said policies.

The Land Resource Defendants were involved in the development and operation of a planned luxurious, residential community known as Grey Rock at Lake Lure (hereinafter "Grey Rock") in Rutherford County, North Carolina. On September 11, 2008, a Complaint was filed against the Land Resource Defendants in the Superior Court division of Rutherford County, North Carolina by a number of plaintiffs arising out of their purchases of residential real estate in Grey Rock.

On January 22, 2010, a First Amended Complaint was filed against the Land Resource Defendants in the same court. (The original Complaint and the First Amended Complaint will hereinafter be collectively referred to as the "North Carolina lawsuit").[1]  The plaintiffs in the North Carolina lawsuit are named Defendants herein and will hereinafter be collectively known as the "North Carolina Plaintiffs".[2]

The gravamen of the North Carolina Lawsuit is fraud and breach of contract. In sum, the North Carolina Plaintiffs allege that the Land Resource Defendants engaged in a pattern and course of business which operated as a fraud and deceit upon the North Carolina Plaintiffs by making material misrepresentations regarding the proposed development, construction schedules and amenities at Grey Rock, and by using false and misleading sales tactics to induce the North Carolina Plaintiffs to purchase lots in Grey Rock.  The Cincinnati is currently defending the Land Resource Defendants against the allegations of the North Carolina Plaintiffs pursuant to a reservation of rights.

---

[1]  The insured defendants in the North Carolina lawsuit include:  Land Resource Group of North Carolina, LLC; Land Resource Group, Inc.; Land Resource, LLC a/k/a Land Resource Companies, LLC; LR Buffalo Creek, LLC; Southern HOA Management, LLC, Michael Flaskey; J. Robert Ward; Paul Beidel; Robert Vacko; Clark Champion; Tammy Mikesell; Jeanette Manner-Jones; Charlene Miller; Patrick Moore; Mitch Ben Miller; Shannon Glover; and Marie Fox.

[2] Three of the twenty-two original plaintiffs in the North Carolina lawsuit, Jill Anne Lycan and Reuben and Krystal Joy have filed voluntary dismissals without prejudice of their claims.

On October 30, 2008, all of the Land Resource Entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court, the United States Bankruptcy Court for the Middle District of Florida: Case No. 6:08-bk-10159-ABB (Land Resource, LLC a/k/a Land Resource Companies, LLC); Case No. 6:08-bk-10160-ABB (Land Resource Group, Inc.); Case No. 6:08-bk-10162-ABB (LR Buffalo Creek, LLC); Case No. 6:08-bk-10171-ABB (Land Resource Group of North Carolina, LLC); Case No. 6:08-bk-10185-ABB (Southern HOA Management, LLC).   On March 20, 2009, the Chapter 11 subsidiary cases of Land Resource Group, LLC, Land Resource Group of North Carolina, LLC, LR Buffalo Creek, LLC, and Southern HOA Management, LLC were converted to Chapter 7, and Leigh R. Meininger was appointed Chapter 7 Trustee in each of the bankruptcy cases of the Chapter 7 Defendants (the "Trustee").   On June 30, 2009, the parent case, Land Resource, LLC was converted from Chapter 11 to Chapter 7.   On May 11, 2009, in response to the Motion for Relief from the Automatic Stay filed by the plaintiffs in the North Carolina lawsuit, this Court entered an Order allowing the plaintiffs in the North Carolina lawsuit to proceed against the non-debtor defendants, including the Land Resource Individual Defendants.   *See Doc.* 488.   However, this Court denied the Motion for Relief from the Stay as to the Land Resource Entities because insurance coverage for the debtors was unknown.   *Id.*

While The Cincinnati is defending the Land Resource Defendants against the allegations in the North Carolina lawsuit pursuant to a reservation of rights, The Cincinnati is in a position of doubt and uncertainty as to its obligation to the Land Resource Defendants under the provisions of the insurance policies and believes it may not be obligated to defend and/or indemnify the Land Resource Defendants. The Cincinnati seeks a declaratory judgment (1) establishing that it is not obligated to defend or indemnify the Land Resource Defendants for any claims asserted in the North Carolina lawsuit and (2) establishing that it has no liability to the Land Resource Defendants for any claims asserted in the North Carolina lawsuit and that it is not responsible for the payment of any damages which may be awarded against the Land Resource Defendants.

The coverage defenses asserted by The Cincinnati against the Land Resource Defendants and North Carolina Plaintiffs are identical, and the coverage legal issues as to any particular claim are identical. The North Carolina Plaintiffs, as creditors of the Land Resource Entities, are parties in interest in this case and all have purported claims for coverage under the policies.

Failure to join all of the Defendants in a single declaratory judgment action to determine the rights of all parties under the policies will result in having to try identical issues of law and fact in separate lawsuits. Separate trials could give rise to inconsistent results which, in turn, would adversely impact administration of this

case.  For example, the outcome on The Cincinnati's coverage claims against the Land Resource Entities and The Cincinnati's defenses against the North Carolina Plaintiffs directly impact whether the North Carolina Plaintiffs' claims could be paid from the policies or from other assets of the Land Resource Entities' estates. If The Cincinnati prevailed on coverage in the first of two cases, the result might not be binding in the second case.  The court, in *Independent Fire Ins. Co. v. Paulekas*, 633 So.2d 1111 (Fla. 3d DCA 1994), held that a coverage question previously decided in favor of the insurer against its insured is not binding on a third party claimant who is not a party to the declaratory judgment action.  An inconsistent result in the second case could not be reconciled with the first adjudication.  For example, if The Cincinnati prevailed on its coverage claims against the Land Resource Entities (without the joinder of the North Carolina Plaintiffs), the North Carolina Plaintiffs could only look to assets of the bankruptcy estate other than the policies for payment.  If the North Carolina Plaintiffs prevailed on the coverage issues in the second action in another forum, they would assert rights to the proceeds of the policies, a result which could not be reconciled with the Bankruptcy Court's prior adjudication.  The same potential for inconsistent and irreconcilable results exists with respect to coverage issues involving the Land Resource Individual Defendants.

Rule 7019 of the Bankruptcy Rules was designed to prevent just such a result. *See Haas v. Jefferson National Bank*, 442 F.2d 394 (5th Cir. 1971); *Harris Trust & Savings Bank v. Energy Assets Intern Corp.*, 124 F.R.D. 115 (E.D. La. 1989); *Brown v. Christman*, 126 F.2d 625 (Dist. Of Columbia Circuit 1942); and *Johnson v. Middleton*, 175 F.2d 535 (7th Cir. 1949).

This Court has jurisdiction over all Defendants in this adversary proceeding. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S. Ct. 1493 (1995); *In re Toledo*, 170 F.3d 1340 (11th Cir. 1999); *In re Lemco Gypsum*, 910 F.2d 784 (11th Cir. 1990). As in *Celotex*, the resolution of the claims of the North Carolina Plaintiffs and the Land Resource Individual Defendants will have a direct and substantial effect on the bankruptcy estates of the Land Resource Entities and distributions to creditors.

## JURISDICTION AND VENUE

### 1.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### 2.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334, § 157(a) and § 157(b) and other applicable law.

3.

This Complaint is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure to obtain a declaratory judgment.

4.

Venue is proper pursuant to 28 U.S.C. § 1409.

## PARTIES

5.

Plaintiff, The Cincinnati Insurance Company ("The Cincinnati"), is a Corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio.

### The Land Resource Defendants

6.

Defendant Land Resource Group of North Carolina is a Limited Liability Company organized under the laws of the State of North Carolina, with its principal place of business in Orlando, Orange County, Florida.

7.

Defendant Land Resource Group, Inc. is a corporation organized under the laws of the State of Georgia, with its principal place of business in Orlando, Orange County, Florida.

8.

Defendant, LR Buffalo Creek, LLC is a Limited Liability Company organized under the laws of the State of Georgia, with its principal place of business in Orlando, Orange County, Florida.

9.

Defendant Land Resource LLC, a/k/a Land Resource Companies, LLC, is a Limited Liability Company organized under the laws of the State of Georgia, with its principal place of business in Orlando, Orange County, Florida.

10.

Defendant Michael Flaskey was at all relevant times the CEO of Defendant Land Resource and, upon information and belief, resides in the State of Georgia or the State of Florida.

11.

Defendant J. Robert Ward was at all relevant times the Founder and Chairman of Defendant Land Resource, and upon information and belief, resides in the State of Georgia or the State of Florida.

12.

Defendant Paul Beidel was at all relevant times the President and COO of Defendant Land Resource, and upon information and belief, resides in the State of Georgia or the State of Florida.

13.

Defendant Robert Vacko was at all relevant times the CFO of Land Resource, and upon information and belief, resides in the State of Georgia or the State of Florida.

14.

Defendant Clark Champion was at all relevant times the Director of Community Operations for Southern HOA Management, LLC and upon information and belief, resides in the State of Washington.

15.

Defendant Tammy Mikesell was at all relevant times the Association Manager for Southern HOA Management, LLC, and upon information and belief, resides in the State of Georgia.

16.

Defendant Jeanette Manner-Jones was at all relevant times the General Manager for Southern HOA Management, LLC, and upon information and belief, resides in the State of Florida.

17.

Defendant Charlene Miller was at all relevant times a sales executive/sales agent and/or broker for Land Resource, and upon information and belief, resides in the State of Florida.

18.

Defendant Patrick Moore was at all relevant times a sales executive/sales agent and/or broker for Land Resource, and upon information and belief, resides in the State of North Carolina.

19.

Defendant Mitch Ben Miller was a sales agent and/or broker for Land Resource, and upon information and belief, resides in the State of North Carolina.

20.

Defendant Shannon Glover was at all relevant times a sales agent and/or broker for Land Resource, and upon information and belief, resides in the State of Tennessee.

21.

Defendant Marie Fox was at all relevant times an attorney in fact, authorized agent and closing coordinator of LR Buffalo Creek, and upon information and belief held a position for Southern HOA Management, LLC.  Further, upon information and belief, Defendant Fox resides in the State of North Carolina.

Plaintiffs in the North Carolina Lawsuit

22.

Defendants Herschel Allen and wife, Elizabeth Allen are citizens and residents of Dunwoody, Georgia.

23.

Defendants Sven Ronny Carlsson and wife, Susan P. Carlsson a/k/a Carlsson Investments, LLC, are citizens and residents of Germantown, Tennessee.

24.

Defendants Wayne Cox and wife, Josephine Cox are citizens and residents of San Diego, California.

25.

Defendants Glenn A. Day and wife, Katherine Kostoff-Day are citizens and residents of San Diego, California.

26.

Defendants Calvin C. Henderson and wife, Elaine W. Henderson are citizens and residents of Rockville, Maryland.

27.

Defendants John Kasianowicz and wife, Rachel H. Kasianowicz are citizens and residents of Darnestown, Maryland.

28.

Defendant Glenn M. Swartz, Jr., and wife, Dawna L. Swartz are citizens and residents of Mount Airy, Maryland.

29.

Defendant David Lee Wood is a citizen and resident of San Francisco, California.

30.

Defendant Stephen Peter Bloom is a citizen and resident of San Francisco, California.

31.

Defendants Marcos I. Rubert and wife, Kathryn M. Rubert are citizens and residents of Celebration, Florida.

32.

Defendant Brian J. Krebs is a citizen and resident of Alpharetta, Georgia.

## **THE UNDERLYING ACTION**

33.

On or about September 11, 2008, the North Carolina Plaintiffs, who are residents of various states throughout the United States and who allegedly purchased various lots in the Grey Rock Subdivision in Rutherford County, North Carolina, filed in the Superior Court division of Rutherford County, State of North Carolina, a Complaint against the Land Resource Defendants and other defendants, having Civil Action File No. 08-CVS-1283.

34.

On or about January 22, 2010, the North Carolina Plaintiffs filed a First Amended Complaint.[3]   The First Amended Complaint encompasses all of the allegations of the original Complaint and added some new defendants[4] and new causes of action.[5] A true and correct copy of said First Amended Complaint is attached hereto as ***Exhibit "A".***

35.

The gravamen of both the above-referenced Complaint and First Amended Complaint is fraud and breach of contract.

36.

Specifically, the North Carolina Plaintiffs allege in both the Complaint and First Amended Complaint that the Land Resource Defendants engaged in a pattern and course of business which operated as a fraud and deceit upon the North Carolina Plaintiffs by making material misrepresentations regarding the proposed development, construction schedules and amenities at Grey Rock, and by using

---

[3] In the North Carolina lawsuit, the insured Land Resource Defendants include:  Land Resource Group of North Carolina, LLC; Land Resource Group, Inc.; Land Resource, LLC a/k/a Land Resource Companies, LLC; LR Buffalo Creek, LLC; Southern HOA Management, LLC; Michael Flaskey; J. Robert Ward; Paul Beidel; Robert Vacko; Clark Champion; Tammy Mikesell; Jeanette Manner-Jones; Charlene Miller; Patrick Moore; Mitch Ben Miller; Shannon Glover; and Marie Fox.

[4] In the First Amended Complaint, the North Carolina Plaintiffs added the following defendants:  real estate agent Charlene Miller; real estate agent Patrick Moore; Mallory Elizabeth Ward; Sarah Caitlin Ward; The Mallory Elizabeth Ward Irrevocable Trust; The Sarah Caitlin Ward Irrevocable Trust; and the Estate of Diane Ward.

[5]  In the First Amended Complaint, Plaintiffs added the following causes of action: obtaining property by false pretenses; fraudulent conveyances; piercing the corporate veil; racketeer influence and corrupt organizations; punitive damages; and civil conspiracy.

false and misleading sales tactics to induce the North Carolina Plaintiffs to purchase lots in Grey Rock.

37.

The North Carolina Plaintiffs also allege that the Land Resource Defendants failed to meet their contractual obligations to the North Carolina Plaintiffs by failing to construct the Grey Rock Community as promised, including failing to construct roads, electrical service lines, telephone lines, high speed internet, productive wells, and amenities.

38.

The North Carolina Plaintiffs allege that only two houses in Grey Rock have been developed and the construction of the amenities has not started, and that they have lost the use and enjoyment of their land due to the Land Resource Defendants' mismanagement, excessive delays, broken promises, misrepresentations, acts, omissions and other failures to perform.

39.

The North Carolina Plaintiffs further allege that the acts and omissions of the Land Resource Defendants have rendered their properties virtually unmarketable and worthless as none of the residential lots can be built upon without roads, utilities, and adequate water sources.

40.

The North Carolina Plaintiffs contend that that the few paved roads which the Land Resource Defendants have installed in Grey Rock were negligently designed and/or installed and therefore led to soil erosion which polluted the waters and streams of North Carolina, and gave rise to possible structural and embankment failures.

41.

The North Carolina Plaintiffs allege that while some of the North Carolina Plaintiffs' properties may have gravel road access, other properties remain completely inaccessible by automobiles because there are no roads at all to said properties.

42.

The North Carolina Plaintiffs contend that the Land Resource Defendants, which made tens of millions of dollars from selling Grey Rock lots, have diverted such sums to their executives, other developments, or other business ventures rather than using those funds to provide the roads, wells, amenities and other infrastructure promised to the North Carolina Plaintiffs and other buyers.

43.

The North Carolina Plaintiffs seek recovery for said damages under several legal theories, including violations of the Interstate Land Sales Act; common law recision; breach of contract; breach of the covenant of good faith and fair dealing;

negligence; negligent misrepresentation; fraud in the inducement; fraud; constructive fraud; breach of fiduciary duty; unfair and deceptive trade practices under North Carolina law; obtaining property by false pretenses; fraudulent conveyances; piercing the corporate veil; racketeer influenced and corrupt organizations; punitive damages; and civil conspiracy.

## COMMERCIAL GENERAL LIABILITY POLICY NO. CPP 087 99 61 AND POLICY NO. CPP 087 99 62

44.

Effective January 21, 2006, The Cincinnati issued to Defendant Land Resource Companies, LLC, a certain policy of insurance having Policy No. CPP 087 99 61. The said policy provided, among other coverages, certain commercial general liability insurance coverage as defined and restricted in the said policy for the period January 21, 2006 through January 21, 2009. A true copy of Policy No. CPP 087 99 61 is attached hereto as **Exhibit "B".**

45.

Policy No. CPP 087 99 61 contained a Named Insured Schedule, which named as additional insureds Defendants Land Resource Group, Inc. and Southern HOA Management, LLC.

46.

Policy No. CPP 087 99 61 also provided that officers, managers and directors are additional insureds under the policy, and accordingly, the Land

Resource Individual Defendants may be additional insureds by virtue of their positions as officers, managers or directors in one of the Land Resource Entities.

47.

Effective January 21, 2006, The Cincinnati issued to Defendant LR Buffalo Creek, LLC, a certain policy of insurance having Policy No. CPP 087 99 62.  The said policy provided, among other coverages, certain commercial general liability insurance coverage as defined and restricted in the said policy for the period January 21, 2006 through January 21, 2009.  A true copy of Policy No. CPP 087 99 62 is attached hereto as ***Exhibit "C".***

48.

The Commercial General Liability Coverage Form of Policy No. CPP 087 99 61 (covering Defendants Land Resource, LLC a/k/a Land Resource Companies, LLC; Land Resource Group Inc.; Southern HOA Management, LLC; and the Land Resource Individual Defendants), and Policy CPP 087 99 62 (covering LR Buffalo Creek, LLC), provides in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

      **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.

- 19 -

\*\*\*

**b**.    This insurance applies to 'bodily injury' and 'property damage' only if:

(1)    The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes places in the 'coverage territory;' and

(2)    The 'bodily injury' or 'property damage' occurs during the policy period.

49.

Policies CPP 087 99 61 and CPP 087 99 62 contain the following definitions, in pertinent part:

**SECTION V – DEFINITIONS**

**4.**    "Bodily Injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

**16**.    "Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**20.**    'Property damage' means:

**a.**    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

50.

Policies CPP 087 99 61 and CPP 087 99 62 contain the following exclusion:

**2.**    **Exclusions**

This insurance does not apply to:

    **a.**    **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or in-tended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

51.

Policies CPP 087 99 61 and CPP 087 99 62 contain the following exclusion:

**2.**    **Exclusions**

This insurance does not apply to:

    **f.**    **Pollutant**

(1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants".

52.

Policies CPP 087 99 61 and CPP 087 99 62 contain the following exclusion:

**2.    Exclusions**

This insurance does not apply to:

>   **j.    Damage to Property**
>
>   "Property damage" to:
>
>   (1)    Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, re-placement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to an-other's property.

53.

Policies CPP 087 99 61 and CPP 087 99 62 contain the following exclusion:

**2.    Exclusions**

This insurance does not apply to:

>   **j.    Damage to Property**
>
>   "Property damage" to:
>
>   (2)    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises.

54.

Policies CPP 087 99 61 and CPP 087 99 62 contain the following exclusion:

**2.    Exclusions**

This insurance does not apply to:

**j.**    **Damage to Property**

"Property damage" to:

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations.

55.

Policies CPP 087 99 61 and CPP 087 99 62 contain the following exclusion:

**2.**    **Exclusions**

This insurance does not apply to:

**j.**    **Damage to Property**

"Property damage" to:

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was in-correctly performed on it.

56.

Policies CPP 087 99 61 and CPP 087 99 62 contain the following exclusion:

**2.**    **Exclusions**

This insurance does not apply to:

**k.**    **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

57.

Policies CPP 087 99 61 and CPP 087 99 62 contain the following exclusion:

**2.     Exclusions**

This insurance does not apply to:

> **l.     Damage to Your Work**
>
> > "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

58.

Policies CPP 087 99 61 and CPP 087 99 62 contain the following exclusion:

**2.     Exclusions**

This insurance does not apply to:

> **m.     Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

> (1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

59.

Policies CPP 087 99 61 and CPP 087 99 62 contain the following exclusion:

**2.     Exclusions**

This insurance does not apply to:

### n.    Recall of Products, Work or Impaired Property

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, re-call, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product";

(2)    "Your work"; or

(3)    "Impaired property";

if such product, work or property is with-drawn or recalled from the market or from use by any person or organization be-cause of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

60.

Policy CPP 087 99 61 also excludes coverage for bodily injury, property damage or personal and advertising injury arising out of any misrepresentation, error or omission by the insured or any real estate agent or broker who is either employed by the insured or performing work on the insured's behalf in such capacity.

61.

A dispute exists as to whether there is coverage for the Land Resource Defendants insured under Policy CPP 087 99 61 and Policy CPP 087 99 62 in light of the language in said policies referenced above.

62.

Policies CPP 087 99 61 and CPP 087 99 62 do not provide coverage for the injuries or damages alleged in the North Carolina lawsuit which do not constitute or arise out of bodily injury, property damage or personal and advertising injury, as defined in the said policies.

63.

Policies CPP 087 99 61 and CPP 087 99 62 do not provide coverage for the acts, omissions, injuries, or damages claimed by plaintiffs in the North Carolina lawsuit which may have occurred outside the applicable policy period set forth in the said policies.

64.

Policies CPP 087 99 61 and CPP 087 99 62 do not provide coverage for the acts or omissions on the part of the insureds alleged in the North Carolina lawsuit which do not constitute an occurrence, as defined by the said policies.

65.

Policies CPP 087 99 61 and CPP 087 99 62 do not provide coverage for the acts, omissions, injuries, or damages alleged in the North Carolina lawsuit which are not covered by reason of the exclusions set forth in the said policies and identified above.

66.

Therefore, The Cincinnati contends that in light of the policy language of CPP 087 99 61 and CPP 087 99 62 and the allegations in the North Carolina lawsuit, it may not have a duty to defend and/or indemnify the insureds under said policies of insurance.

## PRODUCTS / COMPLETED OPERATIONS LIABILTY POLICY NO. CAP 584 44 75

67.

Effective January 21, 2006, The Cincinnati issued to Land Resource Group of North Carolina, LLC, a policy of insurance, having Policy No. CAP 586 02 75. The said policy provided products/completed operations liability insurance coverage as defined and restricted in said policy from January 21, 2006 through January 21, 2007.  A true copy of Policy No. CAP 586 02 75 is attached hereto as *Exhibit "D"*.

68.

The Products / Completed Operations Liability Coverage Part of Policy No. CAP 584 44 75, issued to Defendant Land Resource Group of North Carolina, LLC, provides in pertinent part, as follows:

**SECTION I – COVERAGES
PRODUCTS / COMPLETED OPERATIONS**

**BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' included within the 'products-completed operations hazard' to which this insurance applies.

                        \*\*\*

    **b**.    This insurance applies to 'bodily injury' and 'property damage' only if:

    **(1)**    The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes places in the 'coverage territory;' and

    **(2)**    The 'bodily injury' or 'property damage' occurs during the policy period.

69.

Policy CAP 584 44 75 contains the following definitions, in pertinent part:

**SECTION V – DEFINITIONS**

    **3.**    "Bodily Injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

                        \*\*\*

    **14**.    "Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.**   'Products-completed operations hazard':

**a.**   Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:

**(1)**   Products that are still in your physical possession; or

**(2)**   Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

>   **(a)**   When all of the work called for in your contract has been completed; or

>   **(b)**   When all of the work to be done at the job site has been  completed if your contract calls for work at more than one job site; or

>   **(c)**   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

70.

Policy CAP 584 44 75 contains the following exclusion:

**2.**   **Exclusions**

This insurance does not apply to:

>   **a.**   **Expected or Intended Injury**
>
>   "Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or in-tended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

- 29 -

71.

Policy CAP 584 44 75 contains the following exclusion:

**2.    Exclusions**

This insurance does not apply to:

**g.    Damage to Property**

"Property damage" to:

(1)    Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, re-placement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to an-other's property.

72.

Policy CAP 584 44 75 contains the following exclusion:

**2.    Exclusions**

This insurance does not apply to:

**g.    Damage to Property**

"Property damage" to:

(2)    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises.

73.

Policy CAP 584 44 75 contains the following exclusion:

**2.    Exclusions**

This insurance does not apply to:

**h.    Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

74.

Policy CAP 584 44 75 contains the following exclusion:

**2.    Exclusions**

This insurance does not apply to:

**i.    Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

75.

Policy CAP 584 44 75 contains the following exclusion:

**2.    Exclusions**

This insurance does not apply to:

**j.    Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

76.

Policy CAP 584 44 75 contains the following exclusion:

**2.    Exclusions**

This insurance does not apply to:

**k.    Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, re-call, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product";

(2)    "Your work"; or

(3)    "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization be-cause of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

77.

A dispute exists as to whether there is coverage for Land Resource Group of North Carolina, LLC under Policy CAP 584 44 75 in light of the policy language referenced above.

78.

Policy CAP 584 44 75 does not provide coverage for the injuries or damages alleged in the in the North Carolina lawsuit which do not constitute or arise out of bodily injury, property damage or personal and advertising injury, as defined in the said policy.

79.

Policy CAP 584 44 75 does not provide coverage for the acts, omissions, injuries, or damages claimed by plaintiffs in the North Carolina lawsuit which may have occurred outside the applicable policy period set forth in the said policy.

80.

Policy CAP 584 44 75 does not provide coverage for the acts or omissions on the part of the insureds alleged in the North Carolina lawsuit which do not constitute an occurrence, as defined by the said policy.

81.

Policy CAP 584 44 75 does not provide coverage for the acts, omissions, injuries, or damages alleged in the North Carolina lawsuit which are not covered by reason of the exclusions set forth in the said policy and identified above.

82.

Therefore, The Cincinnati contends that in light of the policy language of Policy CAP 584 44 75 and the allegations in the North Carolina lawsuit, it may not

have a duty to defend and/or indemnify Land Resource Group of North Carolina, LLC under said policy of insurance.

## COMMERCIAL UMBRELLA POLICY CCC 114 72 90

### 83.

Effective on January 21, 2006, The Cincinnati issued to Defendant Land Resource Companies, LLC a policy of insurance, having Policy No. CCC 114 72 90. The said policy provided, among other coverages, certain commercial umbrella liability insurance coverage as defined and restricted in the said policy from January 21, 2006 through January 21, 2009. A true copy of Policy No. CCC 114 72 90 issued to Defendant Land Resource Companies, LLC is attached hereto as ***Exhibit "E".***

### 84.

Policy No. CCC 114 72 90, providing commercial umbrella liability insurance, included a Named Insured Schedule, which named as additional insureds all of the Land Resource Entities.

### 85.

Policy No. CCC 114 72 90 also provided that officers, managers and directors are additional insureds under the policy, and accordingly, the Land Resource Individual Defendants may be additional insureds by virtue of their positions as officers, managers or directors in one of the Land Resource Entities.

86.

The Commercial Umbrella Liability Coverage Part of Policy No. CCC 114

72 90 provides, in pertinent part, as follows:

## SECTION I – COVERAGES

### A.    Insuring Agreement

We will pay on behalf of the insured the 'ultimate net loss' which the insured is legally obligated to pay as damages for 'bodily injury', 'personal and advertising injury' or 'property damage' arising out of an 'occurrence' to which this insurance applies….

87.

Policy No. CCC 114 72 90 contains the following definitions, in

pertinent part:

## SECTION V – DEFINITIONS

**4.**    'Bodily injury' means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

\*\*\*

**16.**    'Occurrence' means:

**a.**    An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in 'bodily injury' or 'property damage;' or

**b.**    An offense that results in 'personal and advertising injury.' . . .

\*\*\*

**20.**    'Property damage' means:

**a.**    Physical injury to or destruction of tangible property including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

**b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

88.

Policy No. CCC 114 72 90 contains the following exclusion:

**B.    Exclusions**

This insurance does not apply to:

**4.    Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

89.

Policy No. CCC 114 72 90 contains the following exclusion:

**B.    Exclusions**

This insurance does not apply to:

### 5. Damage to Property

"Property damage" to property owned by any insured, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, re-placement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

90.

Policy No. CCC 114 72 90 contains the following exclusion:

### B. Exclusions

This insurance does not apply to:

### 6. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it

91.

Policy No. CCC 114 72 90 contains the following exclusion:

### B. Exclusions

This insurance does not apply to:

### 7. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard"

92.

Policy No. CCC 114 72 90 contains the following exclusion:

### B. Exclusions

This insurance does not apply to:

### 11.    Expected or Intended Injury

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually intended or expected.

93.

Policy No. CCC 114 72 90 contains the following exclusion:

### B.    Exclusions

This insurance does not apply to:

### 15.    Pollutant Other Than Auto

a.    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants".

94.

Policy No. CCC 114 72 90 contains the following exclusion:

### B.    Exclusions

This insurance does not apply to:

### 16.    Recall of Products, Work or Impaired Property

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, re-call, inspection, repair, replacement, adjustment, removal or disposal of:

a.        "Your product";

b.      "Your work"; or

c.      "Impaired Property";

if such product, work or property is with-drawn or recalled from the market or from use by any person or organization be-cause of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

95.

Endorsement US 3010 12 04, as a part of Policy No. CCC 114 72 90, contains the following exclusion:

**A.**      This insurance does not apply to:

**2.**      Any liability arising out of the rendering of or failure to render any professional services by you or on your behalf with respect to: (a) providing engineering, architectural or surveying services to others; and/or (b) providing or hiring independent professionals to provide engineering, architectural or surveying services in connection with construction work you perform

96.

Endorsement US 3010 12 04, as a part of Policy No. CCC 114 72 90, contains the following exclusion:

**B.**      This insurance does not apply to:

1.      "Property damage" arising out of:

(a) Blasting or explosion…or;

(b) The collapse of or structural injury to any building or structure due to:

(1) Grading of land, excavating, burrowing, filling or backfilling, tunneling, pile driving, cofferdam work or caisson work; or;

(2) Moving, shoring, underpinning, raising, or demolition of any building or structure or removal or rebuilding of any structural support thereof.

2.  "Property damage" to wires, conduit, pipes, drains, sewers, tanks, tunnels or other similar property, or any apparatus in connection therewith, below the surface of the ground, if such property damage is caused by and occurs during the use of mechanical equipment for the purpose of grading of land, paving, excavating, drilling, burrowing, filling, backfilling, or pile driving.

3.  Any liability arising out of any project insured at any time under an owner or contractor controlled insurance program (often referred to as wrap-up plan or program) or similar insurance plan or program.

97.

A dispute exists as to whether there is coverage for the insured defendants under Policy CCC 114 72 90 in light of the policy language referenced above.

98.

Policy CCC 114 72 90 does not provide coverage for the injuries or damages alleged in the North Carolina lawsuit which do not constitute or arise out of bodily injury, property damage or personal and advertising injury, as defined in the said policy.

99.

Policy CCC 114 72 90 does not provide coverage for the acts, omissions, injuries, or damages claimed by plaintiffs in the North Carolina lawsuit which may have occurred outside the applicable policy period set forth in the said policy.

100.

Policy CCC 114 72 90 does not provide coverage for the acts or omissions on the part of the insureds alleged in the North Carolina lawsuit which do not constitute an occurrence, as defined by the said policy.

101.

Policy CCC 114 72 90 does not provide coverage for the acts, omissions, injuries or damages alleged in the North Carolina lawsuit which are not covered by reason of the exclusions set forth in the said policy and identified above.

102.

Therefore, The Cincinnati contends that in light of the policy language of Policy CCC 114 72 90 and the allegations in the North Carolina lawsuit, it may not have a duty to defend and/or indemnify the insureds under said policy of insurance.

103.

The Cincinnati therefore is in a position of doubt and uncertainty as to its obligation to the Land Resource Defendants under the provisions of the said policies of insurance, CPP 087 99 61, CPP 087 99 62, CAP 584 44 75, and CCC 114 72 90.

104.

An actual controversy therefore exists between all of the named parties as to whether The Cincinnati is obligated to defend and/or indemnify the Land Resource Defendants under the above-referenced policies for the claims made in the North Carolina lawsuit.

105.

A declaratory judgment is necessary to guide and protect the Plaintiff, The Cincinnati, from uncertainty and insecurity with respect to whether it is obligated to provide insurance coverage under the above-referenced insurance policies to the Land Resource Defendants for the claims made in the North Carolina lawsuit.

WHEREFORE, The Cincinnati Insurance Company respectfully prays;

(a)    That this Court enter a declaratory judgment establishing that The Cincinnati Insurance Company is not obligated to defend or indemnify the Land Resource Defendants for any claims asserted in the North Carolina lawsuit;

(b)    That this Court enter a declaratory judgment establishing that The Cincinnati Insurance Company has no liability to the Land Resource Defendants for any claims asserted in the North Carolina lawsuit and that it is not responsible for the payment of any damages which may be awarded against the Land Resource Defendants; and

(c)    For such other relief as this Court deems meet and proper.

IURILLO & ASSOCIATES, P.A.

/s/ Camille J. Iurillo
_____

Camille J. Iurillo, Esquire
Florida Bar No.: 902225
ciurillo@iurillolaw.com
Sabrina C. Beavens, Esquire
Florida Bar No.: 569011
sbeavens@iurillolaw.com
600 First Avenue North, Suite 308
St. Petersburg, Florida 33701
(727) 895-8050 telephone
(727) 895-8057 facsimile


AND

NALL & MILLER, LLP

BY:    /s/ Mary A. Palma
_____

Mary A. Palma, Esquire
Georgia Bar No. 559750
235 Peachtree St. NE
Suite 1500
Atlanta, GA 30303-1401
(404) 522-2200 telephone
(404) 522-2208 facsimile
mpalma@nallmiller.com
Motion to Appear *Pro Hac Vice* Pending